IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THE JAMES SKINNER CO., a Nebraska corporation,<br><br>      Plaintiff,<br><br>v.<br><br>ALL FOOD EQUIPMENT, LLC, a Tennessee limited liability company, and BAKERY TECHNOLOGY ENTERPRISES, LLC, a New Mexico limited liability company,<br><br>      Defendants. | Case No. _____<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff The James Skinner Co. ("Skinner"), for its claims for relief against Defendants All Food Equipment, LLC ("AFE") and Bakery Technology Enterprises, LLC ("BTE") (AFE and BTE are sometimes collectively referred to as Defendants) states and alleges as follows:

**PARTIES**

1. Skinner is a corporation incorporated under the laws of the State of Nebraska.

2. AFE is a limited liability company organized under the laws of the State of Tennessee.

3. BTE is a limited liability company organized under the laws of the State of New Mexico.

**JURISDICTION AND VENUE**

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a), as the parties are citizens of different states and the amount in controversy is believed to exceed the sum of $75,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim, including the negotiating for the installation of the Brownie Line, as defined below, occurred within the State of Nebraska.

## FACTUAL BACKGROUND

6. Skinner is one of the largest bakery manufactures in the United States, annually baking over three-hundred million pastries.

7. In early 2020, Skinner was approached by one of its customers to explore the possibility of Skinner installing a new product line to produce brownies and other baked bar goods (the "Brownie Line") for such customer.

8. Such customer stated that it expected to annually purchase millions of dollars of products that would be produced on the Brownie Line, and that it needed the Brownie Line installed and producing product as soon as possible.

9. After being approached by such customer, Skinner began examining the equipment it would have to purchase for the potential installation of the Brownie Line.

10. More importantly, Skinner also began investigating the technology, systems engineering, and installation services that would be necessary to successfully install the Brownie Line.

11. During this investigation, Skinner recognized that it needed to engage an experienced contractor to design and install the Brownie Line given the multiple components and complex nature of such line.

12. In or about May 2020, Skinner purchased an oven for the Brownie Line from the Defendants.

13. Before purchasing the aforementioned oven for the Brownie Line from the Defendants, the Defendants materially represented to Skinner that they had the skill, expertise, knowledge, and other services necessary to successfully design and install the Brownie Line.

14. Defendants affirmatively represented to Skinner that it had the skill, expertise, and knowledge designing and installing complex manufacturing systems such as the Brownie Line, including representing that they had installed similar systems for multiple large manufacturing companies throughout the United States.

15. Defendants affirmatively represented to Skinner that they had the ability to design and install a "turnkey" system for Skinner's Brownie Line and that they had specialized knowledge in designing and installing such systems throughout the United States.

16. When discussing Defendants potentially installing the Brownie Line, Skinner made it clear to the Defendants that Skinner needed the Brownie Line installed and running by a date certain to meet the specific needs of the customer requesting that Skinner install the Brownie Line. Defendants affirmatively represented that they could easily meet such deadline.

17. Defendants made the material representations that they had the knowledge and expertise to design and install the Brownie Line and further that they could install the Brownie Line by a date certain to materially induce Skinner to engage them to install the Brownie Line.

18. Skinner reasonably relied on the Defendants' representations that they had the knowledge and expertise to design and install the Brownie Line in a timely manner and engaged them to install the Brownie Line.

19. In or about May 2020, Defendants had two to three people on site at a time for the installation of the Brownie Line.

20. Immediately after the Defendants began installing the Brownie Line, it became apparent to Skinner that the Defendants did not possess the skill, expertise, and knowledge to design and install the Brownie Line, let alone meet the deadline set by Skinner.

21. For example, and without limitation:

   a. The Defendants did not properly design, engineer, and install the conveyor belts on the Brownie Line, requiring Skinner to purchase new belts and utilize one of its in-house engineers to install such belt.

   b. The Defendants did not properly design, engineer, and install an ultrasonic cutter (used to cut through the brownies), and the Defendants attempted to solve how to properly install the ultrasonic cutter for three weeks to no avail. Given the way that the ultrasonic cutter was installed, it would slam down on the manufacturing line so hard that it loosens bolts and washers on the cutter.

   c. The Defendants did not properly design, engineer, and install certain components of the Brownie Line, causing it to severely vibrate while running, making it impossible for the Brownie Line to successfully run and produce product.

    d. The Defendants did not properly design, engineer, and install batter depositors, which has led to Skinner incurring significant amounts of product waste.

    e. The Defendants did not properly design, engineer, and install the cooling tunnel which resulted in the batter being cooled approximately three degrees Fahrenheit, compared to the thirty-five to forty degrees Fahrenheit that was promised by the Defendants.

    f. The Defendants did not properly design, engineer, and install many other components of the Brownie Line, causing it to not run as a cohesive manufacturing system, making it impossible for the Brownie Line to successfully run and produce product.

22. Despite multiple attempts at installing the Brownie Line over a two to three month period, Defendants could not get the Brownie Line to cohesively work as a successful manufacturing line.

23. Due to the Defendants' failure in properly and successfully engineering and installing the Brownie Line (despite their multiple and repeated representations made above), Skinner was forced to rely on its in-house engineers and hire outside engineers and consultants to attempt and install the Brownie Line at significant expense to attempt and meet its customers deadlines.

24. Eventually Skinner and its team of in-house and outside engineers and consultants were able to successfully install the Brownie Line, but at significant expense to Skinner, including the cost to engage such engineers and missing initial customer deadlines.

25. As a result of the Defendants' actions and misrepresentations, Skinner has been damaged in an amount to be proven at trial.

## FIRST CAUSE OF ACTION
## FRAUDULENT MISREPRESENTATION

26. Skinner incorporates the foregoing paragraphs as if fully set forth herein.

27. As set forth above, Defendants made various representations to Skinner, including, but not limited to the fact that the Defendants had the skill, expertise, and knowledge installing complex manufacturing systems such as the Brownie Line, that they had the ability to design and install a "turnkey" system for Skinner's Brownie Line and that they had specialized knowledge in installing such systems throughout the United States, and that they could have the Brownie Line installed and running by a date certain to meet the specific needs of the customer requesting that Skinner install the Brownie Line.

28. As set forth above, the representations were false.

29. At the time the representations were made, Defendants knew that they were false or made them recklessly without knowledge of their truth and as positive assertions.

30. Defendants made the representations with the intent that Skinner would rely on them.

31. Skinner reasonably relied on the representations made by the Defendants.

32. As a result of the Defendants' fraudulent misrepresentations, Skinner suffered damages in an amount to be proven at trial.

WHEREFORE, Skinner respectfully requests that the Court enter judgment in its favor and against the Defendants in an amount to be proven at trial, plus pre-judgment and post-judgment interest at the maximum legal rate, attorney fees, costs, and for such other, further and different relief as this Court deems just and equitable.

## SECOND CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

33. Skinner incorporates the foregoing paragraphs as if fully set forth herein.

34. As set forth above, Defendants made various representations to Skinner, including, but not limited to the fact that the Defendants had the skill, expertise, and knowledge installing complex manufacturing systems such as the Brownie Line, that they had the ability to design and install a "turnkey" system for Skinner's Brownie Line and that they had specialized knowledge in installing such systems throughout the United States, and that they could have the Brownie Line installed and running by a date certain to meet the specific needs of the customer requesting that Skinner install the Brownie Line.

35. The above representations were made negligently.

36. When Defendants made the above representations, they intended that Skinner would rely on such representations.

37. Skinner's reliance on Defendants' representations was reasonable.

38. As a result of Defendants' negligent misrepresentations, Skinner suffered damages in an amount to be proven at trial.

WHEREFORE, Skinner respectfully requests that the Court enter judgment in its favor and against the Defendants in an amount to be proven at trial, plus pre-judgment and post-judgment interest at the maximum legal rate, attorney fees, costs, and for such other, further and different relief as this Court deems just and equitable.

## THIRD CAUSE OF ACTION
## NEGLIGENCE

39. Skinner incorporates the foregoing paragraphs as if fully set forth herein.

40. Defendants owed certain duties to Skinner as the installer of the Brownie Line.

41. Defendants were negligent by failing to satisfy one or more of the following:

    a. The duty to ensure that they had the skill, expertise, and knowledge to design, engineer, and install complex manufacturing systems such as the Brownie Line;

    b. The duty to ensure that they had the ability to design, engineer, and install a "turnkey" system for the Brownie Line;

    c. The duty to install the Brownie Line to meet the business needs of Skinner in a timely manner; and

    d. The duty to ensure that they could have the Brownie Line installed and running by a date certain to meet.

42. Defendants breached their duties as set forth above.

43. As a direct and proximate result of Defendants' negligence, Skinner has been damaged in an amount to be determined at trial.

WHEREFORE, Skinner respectfully requests that the Court enter judgment in its favor and against the Defendants in an amount to be proven at trial, plus pre-judgment and post-judgment interest at the maximum legal rate, attorney fees, costs, and for such other, further and different relief as this Court deems just and equitable.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT

44. Skinner incorporates the foregoing paragraphs as if fully set forth herein.

45. Defendants were unjustly enriched by receipt of funds from Skinner for the design and installation of the Brownie Line.

46. Defendants' enrichment was at Skinner's expense.

47. It is unjust and inequitable to allow Defendants to retain the benefit of the amounts paid to them by Skinner under the circumstances alleged herein.

48. Skinner is entitled to have Defendants return to it all amounts that are justly owed to it, in an amount to be proven at trial.

49. WHEREFORE, Skinner respectfully requests that the Court enter judgment in its favor and against the Defendants in an amount to be proven at trial, plus pre-judgment and post-judgment interest at the maximum legal rate, attorney fees, costs, and for such other, further and different relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury on all issues triable by jury and hereby designates Omaha, Nebraska as the place of trial.

Dated this 5th day of August, 2020.

        THE JAMES SKINNER CO., Plaintiff

By:   /s/ *Ryan M. Kunhart*
     Ryan M. Kunhart, #24692
     Tiffany S. Boutcher, #26548
     Dvorak Law Group, LLC
     9500 W. Dodge Rd., Ste. 100
     Omaha, NE  68114
     402-934-4770
     402-933-9630 (facsimile)
     rkunhart@ddlawgroup.com
     tboutcher@ddlawgroup.com

Attorneys for Plaintiff.